UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SHARON DIANE KUKHAHN,<br>individually and d/b/a IMF Decoder,<br>Paralegal Research Advocates, and<br>Advocates for Justice, Liberty and<br>Freedom,<br><br>Defendant. | CASE NO. C08-5212BHS<br><br>ORDER GRANTING MOTION<br>FOR PRELIMINARY<br>INJUNCTION |

This matter comes before the Court on the Motion for Preliminary Injunction against Sharon Kukhahn (Dkt. 2). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant Sharon Diane Kukhahn resides and does business in Tacoma, Washington. Dkt. 3 at 2; *see also, e.g.*, Dkt. 3-13, Exh. A -9 at 7. Ms. Kukhahn conducts business under the names IMF Decoder, IRS Codebusters, Paralegal Research Advocates, and Advocates for Justice, Liberty and Freedom. Dkt. 3 at 2. In August 2003, the Internal Revenue Service ("IRS") initiated an investigation of Ms. Kukhahn to determine whether

ORDER - 1

her conduct constitutes criminal violations of federal law. Dkt. 3 at 2-3. It was believed that Ms. Kukhahn purported to "decode" and "correct" IRS records to reflect that her customers were not subject to taxation. *Id.* at 3. In furtherance of its investigation, IRS undercover agents posed as taxpayers and met with Ms. Kukhahn and spoke with her by telephone. *Id.* at 3-4.

In conversations with undercover agents, in promotional videos and audio tapes, and on the IMF Decoder website she operates, Ms. Kukhahn has falsely represented to potential customers that they are not required to pay federal income taxes unless they live in a United States territory and that United States residents may only be taxed by a federal excise tax and only if they are involved in an excise-taxable enterprise. *Id.* at 4. Specifically, Ms. Kukhahn represents that IRS files known collectively as the Individual Master File ("IMF") erroneously classify citizens as residing in a United States territory or involved in an excise-taxable enterprise. *Id.* at 4. Ms. Kukhahn told undercover agents that filing tax returns is voluntary, that only excise taxes are mandatory, and that undercover agents would commit perjury if they were to file individual income tax returns. *Id.* at 10; Dkt. 3-13, Exh. A-9 at 11.

For example, Ms. Kukhahn represents that Transaction Code 150 identifies the taxpayer as filing from the Virgin Islands. Dkt. 3 at 14-15; *see also, e.g.*, Dkt. 3-2, Exh. A-1 at 3. In fact, the code is commonly found in IMFs and indicates that the Master File Entity was created from the posting of a return and does not indicate the type of return filed or the residence of the filer. Dkt. 3 at 15.

As to one undercover agent, Ms. Kukhahn contended that a "blocking series" code of 398 indicated that the filer was involved in the narcotics business and could be prosecuted under a treaty between the United States and the United Kingdom. Dkt. 3 at 15-16; *see also, e.g.*, Dkt. 3-10, Exh. A-7 at 14. In reality, the number indicates a three-digit series representing the order in which returns are received and assigned to the IMF to facilitate retrieval of the return at a later date and bears no relation to a tax treaty

ORDER - 2

1  between the United States and the United Kingdom. Dkt. 3 at 16; *see also, e.g.*, Dkt. 3-2,
2  Exh. A-1 at 6.

3       Ms. Kukhahn promotes her decoding services at Pinnacle Quest International
4  marketing seminars and on websites such as www.imfdecoder.com and www.aljf.com.
5  Dkt. 3 at 12-13; *see also* Dkt. 6; Dkt. 7.

6       Ms. Kukhahn charges single taxpayers between $1,750 and $1,900 and married
7  taxpayers between $2,450 and $3,195 for her decoding services. Dkt. 3 at 4; *see also, e.g.*,
8  Dkt. 3-7, Exh. A-4. Ms. Kukhahn claims to have performed decoding services for
9  thousands of customers and that not one customer's IMF was found to be accurate. Dkt. 3
10 at 5; *see also* Dkt. 3-13, Exh. A-9 at 10. From January 12, 2002, to September of 2006, at
11 least 1,136 individuals have filed packages with the IRS that are of the type Ms. Kukhahn
12 prepares for customers, and many of these individuals have written checks to Ms.
13 Kukhahn or her business entities. Dkt. 3 at 5. Of 11 known IMF Decoder customers, all
14 but one have not filed tax returns in years. *Id.* at 6. The customers who have failed to file
15 tax returns owe between $8,000 and $1,000,000, and many owe more than $100,000. *Id.*
16 In her own IRS filings for 1996, 1998, and 1999, Ms. Kukhahn asserts that she has never
17 been established as a taxpayer. *Id.* at 16.

18      The Government now seeks to enjoin Ms. Kukhahn's conduct in advising
19 customers that they are not required to pay taxes. Dkt. 2. Ms. Kukhahn was served with
20 the summons and complaint in this matter on April 12, 2008. Dkt. 10. Ms. Kukhahn has
21 not yet answered or otherwise defended this matter.

22      Ms. Kukhahn was filed with the instant motion on April 22, 2008. Dkt. 12. On
23 May 1, 2008, Ms. Kukhahn filed an affidavit and accompanying forms. Dkt. 11. Ms.
24 Kukhahn apparently disputes whether the Court has subject matter jurisdiction but does
25 not otherwise address the allegations in the complaint or in the Motion for Preliminary
26 Injunction (Dkt. 2).

27
28

ORDER - 3

## II. PRELIMINARY INJUNCTION STANDARDS

Federal Rule of Civil Procedure 65 governs preliminary injunctions and provides, in part, as follows:

> (a) Preliminary Injunction.
> (1) Notice. The court may issue a preliminary injunction only on notice to the adverse party.
> \* \* \*
> (b) Temporary Restraining Order.
> \* \* \*
> (3) Expediting the Preliminary-Injunction Hearing. If the order is issued without notice, the motion for a preliminary injunction must be set for hearing at the earliest possible time, taking precedence over all other matters except hearings on older matters of the same character. At the hearing, the party who obtained the order must proceed with the motion; if the party does not, the court must dissolve the order.
> \* \* \*
> (c) Security. The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, its officers, and its agencies are not required to give security.
> (d) Contents and Scope of Every Injunction and Restraining Order.
> (1) Contents. Every order granting an injunction and every restraining order must:
> (A) state the reasons why it issued;
> (B) state its terms specifically; and
> (C) describe in reasonable detail--and not by referring to the complaint or other document--the act or acts restrained or required.
> (2) Persons Bound. The order binds only the following who receive actual notice of it by personal service or otherwise:
> (A) the parties;
> (B) the parties' officers, agents, servants, employees, and attorneys; and
> (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).

Fed. R. Civ. P. 65.

Under the traditional standard, a preliminary injunction will issue if "(1) the moving party will suffer irreparable injury if the relief is denied; (2) the moving party will probably prevail on the merits; (3) the balance of potential harm favors the moving party; and (4) the public interest favors granting relief." *Cassim v. Bowen*, 824 F.2d 791, 795 (9th Cir. 1987). Alternatively, a preliminary junction will issue where the moving party demonstrates either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions going to the merits are raised

ORDER - 4

1  and the balance of hardships tips sharply in the moving party's favor. *Id.* These
2  alternatives represent extremes on a single continuum rather than two distinct tests. *Clear*
3  *Channel Outdoor Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003).
4  Accordingly, the greater the relative hardship to the moving party, the less probability of
5  success is required. *Id.*

6  The United States may seek an injunction under I.R.C. § 7408 to enjoin conduct
7  subject to violation under I.R.C. § 6700. Because I.R.C. § 7408 specifically authorizes
8  district courts to issue injunctions, the Government is not required to satisfy traditional
9  requirements for equitable relief. *United States v. Estate Preservation Servs.*, 202 F.3d
10 1093, 1098 (9th Cir. 2000). An injunction will issue under I.R.C. § 7408 if the Court finds
11 that a defendant is engaged in conduct subject to penalty under section 6700, 6701, 6707,
12 or 6708, of the Internal Revenue Code or is in violation of regulations issued under
13 section 330 of title 31 of the United States Code and that injunctive relief is an
14 appropriate means of preventing the recurrence of the offending conduct. 26 U.S.C. §
15 7408(b), (c).

16 When proceeding under I.R.C. § 7408, the Government must prove the following
17 five elements by a preponderance of the evidence: (1) Defendant organized or sold, or
18 participated in the organization or sale of, an entity, plan, or arrangement; (2) Defendant
19 made, or caused to be made, false or fraudulent statements concerning the tax benefits to
20 be derived from the entity, plan, or arrangement; (3) Defendant either knew or had reason
21 to know that the statements were false or fraudulent; (4) Defendant's false or fraudulent
22 statements pertained to a material matter; and (5) an injunction is necessary or appropriate
23 to prevent recurrence of this conduct. I.R.C. §§ 6700(a), 7408(b); *Estate Preservation*
24 *Servs.*, 202 F.3d at 1098.

25 In addition, the Government may seek an injunction under I.R.C. § 7402. Such a
26 remedy is "in addition to and not exclusive of any and all other remedies." 26 U.S.C. §
27 7402(a). Under I.R.C. § 7402, district courts have jurisdiction to issue injunctions "as
28

may be necessary or appropriate for the enforcement of the internal revenue laws." 26 U.S.C. § 7402(a). While the Ninth Circuit has not yet determined whether traditional equitable factors apply to injunctions under § 7402, other courts in this district have considered the equitable factors. *See, e.g.*, *United States v. Johnson*, 2007 WL 634019, at *2 (W.D. Wash. February 23, 2007) ("While the Court does not decide whether it must apply the equitable factors in issuing an injunction under § 7402, it appears that the Plaintiff has satisfied each factor."); *United States v. Cohen*, 222 F.R.D. 652, 653-54 (W.D. Wash. 2004); *United States v. Stephenson*, 313 F. Supp. 2d 1054, 1056 (W.D. Wash. 2004).

### III. FINDINGS OF FACT

Based upon the unopposed Motion for Preliminary Injunction (Dkt. 2) and the materials submitted in support thereof, the Court makes the following findings of fact:

1. Sharon Kukhahn ("Kukhahn") resides and does business in Tacoma, Washington.

2. Ms. Kukhahn promotes tax-fraud schemes using the business names IMF Decoder, Paralegal Research Advocates, and Advocates for Justice, Liberty, and Freedom.

3. Ms. Kukhahn promotes her business on her websites www.ajlf.com (Advocates for Justice, Liberty, and Freedom) and www.paralegalresearchadvocates.com (Paralegal Research Advocates).

4. Ms. Kukhahn is the president and chief executive officer of both Paralegal Research Advocates and IMF Decoder.

5. Ms. Kukhahn's IMF Decoder scheme was promoted through Pinnacle Quest International ("PQI") and was sold only to PQI members in 2004 and 2005.

6. Kukhahn also markets her "decoding" scheme at seminars, either personally or in association with other promoters.

ORDER - 6

7. For a fee, a person may join PQI and become eligible to purchase the many services PQI promotes.

8. Through the seminars, promotional materials, and websites referred to above, Ms. Kukhahn sells a multi-phase program that falsely advises customers that: (1) they are not required to pay federal income taxes unless they are living in a United States territory; and (2) United States residents can only be taxed via a federal excise tax if they are involved in an excise taxable enterprise. Ms. Kukhahn further falsely advises customers that the IRS, in order to subject people to federal taxes, fraudulently misidentifies citizens as residents of a United States territory such as the U.S. Virgin Islands, and/or misidentifies their occupations as an enterprise subject to an excise tax, such as firearms manufacturing.

9. Ms. Kukhahn charges single taxpayers between $1,750 and $1,900 and charges married taxpayers between $2,450 and $3,195 for her "decoding" service, which is described below.

10. The first phase of the program provides the customer a Freedom of Information Act ("FOIA") form that requests the IRS to produce a transcript of the customer's IMF (individual master file).

11. Once the customer receives a copy of his or her IMF transcript, under the second phase of the program Ms. Kukhahn/IMF Decoder purportedly "decodes" the IMF to determine whether the IRS has fraudulently converted the customer's residence to a territory and/or occupation to an excise taxable enterprise. Invariably, Ms. Kukhahn falsely determines that the IRS has fraudulently misidentified the customer's residence and/or occupation in the customer's IMF.

12. In the third phase, Ms. Kukhahn/IMF Decoder prepares a "rebuttal letter" to the IRS demanding that the IRS correct "false and unlawful entries" and produce "lawful documentation evidencing" that the customer is subject to internal revenue laws and is

required to pay income taxes. The letter demands that the IRS cease and desist all actions against the customer.

13. In the fourth phase of the "decoding" process, after the submission of a follow-up FOIA request, Ms. Kukhahn/IMF Decoder purportedly checks for any additional "false postings" by the IRS and purportedly confirms that past "false postings" that were previously "rebutted" were removed.

14. The final phase of the "decoding" process consists of obtaining certified copies of the documents obtained through the FOIA process that purportedly demonstrate that the customer is not required to file a federal tax return. These documents are then ostensibly available for use as evidence in the purportedly "unlikely" event the customer's claim that he/she is not required to file tax returns is challenged in court.

15. From January 2002 through September 2006, at least 1,100 persons have filed this type of "rebuttal letter" (titled "Reports of Fraudulent and Misleading Postings on the Individual Master File") with the IRS. More than two dozen of the rebuttal letters have used Ms. Kukhahn/IMF Decoder's post office box address as the return address.

16. Of a sample of 11 known customers, all but one have not filed tax returns for several years. Of the non-filers, one customer alone owes more than $1,000,000 in taxes and penalties and many others owe more than $100,000.

17. In 2004 and 2005, an IRS undercover agent posed as an IMF Decoder customer and paid the $1,750 fee to become "decoded."

18. Ms. Kukhahn/IMF Decoder falsely determined that the IRS had fraudulently coded the undercover agent's IMF as a "Virgin Islands filer."

19. The undercover agent then received the "Phase 3 rebuttal package" from Ms. Kukhahn/IMF Decoder. The rebuttal package, which included a false disclaimer that IMF Decoder is not offering tax advice, falsely states that the IRS is not an agency of the federal government and demands "lawful documentation evidencing" that the undercover

agent's assumed identity is subject to internal revenue laws and required to file and pay income taxes.

20. As part of promoting her decoding services, Ms. Kukhahn falsely tells customers that paying income taxes and filing federal income tax returns are voluntary, unless a person is engaged in an excise taxable activity such as manufacturing firearms.

21. As part of the "decoding" process, Ms. Kukhahn falsely informs her customers that the IRS has fraudulently coded them as either residents of United States territories or persons engaged in businesses subject to an excise tax.

22. As a result, Ms. Kukhahn falsely tells her customers that they can rely on her "decoding" to prove that they are not legally obligated to file federal income tax returns or pay federal income taxes.

23. In promoting her scheme, Ms. Kukhahn falsely claims that the government is forbidden from taxing "natural born citizens."

24. In promoting her scheme, Ms. Kukhahn falsely states that if an individual signs an IRS tax form, particularly IRS Form 1040, then the individual has "declared under penalty of perjury [he/she] executed the [Form] 1040 in Washington, D.C., or a Territory or Commonwealth or possession of the government of the United States" and that an individual who "executed the [Form] 1040 while . . . in one of the states of the Union, [he/she] would have committed perjury."

25. In promoting her scheme, Kukhahn falsely states that if an individual signs any IRS form, especially IRS Form 1040, that person is declaring under penalty of perjury that he/she is a resident of and engaged in a taxable business activity in the Virgin Islands.

26. In meetings in June and August 2005 with IRS undercover agents posing as potential customers of IMF Decoders, Kukhahn made the following statements:

    (a) that the IRS had coded Ms. Kukhahn's IMF to indicate that she is a pistol and revolver manufacturer living in the Virgin Islands;

      (b)    that Ms. Kukhahn has studied in-depth IRS Forms W-2, W-4, and 1099;

      (c)    that Ms. Kukhahn has thousands of customers;

      (d)    that one purpose of the decoding process is to create more work for the IRS to discourage the IRS from investigating the customer.

27. In correspondence with customers, Ms. Kukhahn/IMF Decoder falsely states that only citizens with qualified foreign sources of income are required to file a federal income tax return.

28. In correspondence with customers, Ms. Kukhahn/IMF Decoder falsely states that no tax is imposed on earnings of U.S. citizens living and working within the 50 states who make an equal exchange for their labor for wages since no gain results from the transaction.

29. Ms. Kukhahn claims to be a certified paralegal and claims to have done in-depth research on "rebutting" Forms 1040, W-2, W-4, and 1099.

30. Ms. Kukhahn also advises her customers on methods to fraudulently hide assets and income from the IRS.

31. Ms. Kukhahn, through Paralegal Research Advocates, charges $125 per letter to respond to IRS collection notices. She stated to IRS undercover agents that the IRS has no authority to issue summonses and thus said that customers can put summonses in a shredder.

32 Ms. Kukhahn knows, or has reason to know, that her statements to customers are false and that customers are legally obligated to file federal income tax returns and to pay federal income tax.

33. The Government has thus far identified 315 customers from 43 different states who have participated in Ms. Kukhahn's scheme.

34. The IRS has determined from initial examinations of Ms. Kukhahn's customers a total loss of revenue of approximately $4.9 million caused by her customers' failure to file tax returns and pay income taxes.

35. Because Ms. Kukhahn's customers filed numerous frivolous and irrelevant FOIA requests, the IRS has also had to devote substantial resources to processing these requests.

## IV. CONCLUSIONS OF LAW

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1340 and 1345 and 26 U.S.C. §§ 7402(a) and 7408.

2. Venue is thus proper under 28 U.S.C. §§ 1391 and 1396.

3. I.R.C. § 7408 authorizes a district court to enjoin any person from engaging in conduct subject to penalty under I.R.C. § 6700 if injunctive relief is appropriate to prevent recurrence of that conduct.

4. Section 6700 imposes a penalty on any person who organizes or participates in the sale of a plan or arrangement and in so doing makes or furnishes a statement with respect to the allowability of any deduction or credit, the excludability of any income, or the securing of any tax benefit by participating in the plan or arrangement which that person knows, or has reason to know, is false or fraudulent as to any material matter.

5. Ms. Kukhahn, individually and through IMF Decoder, Paralegal Research Advocates, and Advocates for Justice, Liberty, and Freedom, organizes, sells, and operates tax-fraud schemes that falsely promise tax benefits to customers.

6. Ms. Kukhahn, personally and through her employees, sells and administers the IMF decoding scheme described above, on the Internet and at promotional seminars.

7. The essence of Ms. Kukhahn's promotion is that the IRS has engaged in a conspiracy to deceive the American public about the requirements for filing federal income tax returns and paying federal income taxes. According to Ms. Kukhahn, by deciphering one document, the IMF, she can reveal and "rebut" the IRS's purportedly

ORDER - 11

fraudulent assertion that her customers are either a resident of the U.S. Virgin Islands or other United States territory or engaged in an excise taxable industry; and after this revelation and rebuttal, her customers will be classified as "nontaxpayers" who do not have to file federal income tax returns or pay federal income tax. In making these assertions, Ms. Kukhahn misquotes or misapplies a myriad of authority.

8. Ms. Kukhahn knew, or had reason to know, that the statements described above were false or fraudulent.

9. As someone who claims to have done extensive research on the subject, Ms. Kukhahn is or has reason to be aware that her IMF decoding scheme has been rejected by the courts. *See United States v. Standring*, 2006 WL 689116 (S.D. Ohio 2006); *United States v. Kahn*, 2004 WL 1089116, *1 (M.D. Fla. Mar. 30, 2004).

10. Moreover, Ms. Kukhahn tacitly admitted to undercover agents to knowing that the IRS rejects the scam she promotes; she advised the undercover agents that they had about three years after they stopped filing before the IRS "come[s] after you."

11. The statements were material because customers might rely, and did in fact rely, on Kukhahn's false statements in deciding not to file federal income tax returns and pay federal income taxes. As a result, Kukhahn's repeated false statements are "material" within the meaning of section 6700.

12. If not enjoined, Ms. Kukhahn is likely to continue to organize and sell tax-fraud schemes.

13. Ms. Kukhahn's "network and the mechanisms for continuing the business enterprise" are still in place. Moreover, Ms. Kukhahn has not taken any responsibility for her actions and has provided no assurances that she will change her behavior in the future. Unless Ms. Kukhahn is enjoined, she will be free to continue profiting from peddling her false tax scheme that continues to cause harm to her customers (who rely on her advice and representations) and to the United States.

14.     I.R.C. § 7402(a) authorizes a court to issue injunctions as may be necessary or appropriate for the enforcement of the IRS laws, even if the United States has other remedies available for enforcing those laws.

15.     Ms. Kukhahn substantially interfered with the enforcement of the IRS laws by promoting her tax-fraud schemes. Customers who utilize Ms. Kukhahn's services fail to file returns and have filed many frivolous and irrelevant FOIA requests.

16.     Ms. Kukhahn's conduct resulted in irreparable harm to the United States for which the United States has no adequate remedy at law.

17.     There are serious questions going to the merits of this matter, and the balance of hardships tips sharply in the Government's favor.

18.     Unless enjoined by this Court, Ms. Kukhahn is likely to continue to promote her tax-fraud scheme. The United States is entitled to injunctive relief under I.R.C. § 7402(a) to prevent the recurrence of this misconduct.

## V. ORDER

Therefore, it is hereby

**ORDERED** that the Motion for Preliminary Injunction against Sharon Kukhahn (Dkt. 2) is **GRANTED**. Based on the foregoing findings of fact and conclusions of law, the Court enters the following preliminary injunction against Sharon Kukhahn:

1.     Pursuant to 26 U.S.C. §§ 7402 and 7408, Sharon Kukhahn and her representatives, agents, servants, employees, and anyone in active concert or participation therewith, are hereby **ENJOINED**, until the Court orders otherwise, from directly or indirectly by means of false, deceptive, or misleading commercial speech:

(a)     organizing or selling the IMF Decoder scheme or any other tax shelters, plans or arrangements that advise or encourage others to attempt to evade the assessment or collection of correct federal tax;

(b)     engaging in any other activity subject to penalty under 26 U.S.C. § 6700, including organizing or selling a plan or arrangement and in connection

1  therewith making or furnishing a statement regarding the excludability of income
2  or securing of any other tax benefit by participating in the plan that Ms. Kukhahn
3  and her representatives, agents, servants, employees, and anyone in active concert
4  or participation with her knows or has reason to know is false or fraudulent as to
5  any material matter;

6   (c) filing, providing forms for, or otherwise aiding and abetting the
7  preparation or filing of frivolous FOIA requests with the IRS;

8   (d) preparing or assisting in the preparation of documents purporting to
9  "decode" IRS files;

10  (e) giving advice to anyone about the federal tax laws or federal tax
11  matters, or representing anyone in connection with any matter before the IRS;

12  (f) engaging in conduct subject to any penalty under the Internal
13  Revenue Code; or

14  (g) engaging in conduct that substantially interferes with the proper
15  administration and enforcement of the internal revenue laws.

16  2. Pursuant to 26 U.S.C. § 7402, it is **ORDERED** that Ms. Kukhahn shall
17 contact by mail (and also by email, if an email address is known) all persons who have
18 purchased any products, services, or advice associated with the false or fraudulent tax
19 scheme described herein, inform those individuals of the Court's findings concerning the
20 falsity of Ms. Kukhahn's prior representations, and attach a copy of this preliminary
21 injunction against Ms. Kukhahn and her related entities;

22  3. Pursuant to 26 U.S.C. § 7402, it is **ORDERED** that Ms. Kukhahn and her
23 representatives, agents, servants, employees, attorneys, and those persons in active
24 concert or participation with her, remove from Defendant's websites all tax scheme
25 promotional materials and false commercial speech and to display prominently on the
26 first page of those websites a complete copy of this preliminary injunction for one year;
27 and

28

ORDER - 14

4. Pursuant to 26 U.S.C. § 7402, it is **ORDERED** that Ms. Kukhahn shall provide to the Justice Department, within 30 days of entry of this preliminary injunction, a list of all persons who have purchased any products, services or advice from her in the past five years.

DATED this 29th day of May, 2008.

_____
BENJAMIN H. SETTLE
United States District Judge

ORDER - 15