UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

SHARON DIANE KUKHAHN, individually and d/b/a IMF Decoder, Paralegal Research Advocates, and Advocates for Justice, Liberty and Freedom,

    Defendant.

CASE NO. C08-5212BHS

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

This matter comes before the Court on the Motion for Default Judgment (Dkt. 19). The Court has considered the pleadings filed in support of the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

## I. PROCEDURAL BACKGROUND

Plaintiff United States filed its complaint for permanent injunction under sections 7402 and 7408 of the Internal Revenue Code on April 7, 2008, seeking to bar defendant Sharon Diane Kukhahn, individually and doing business as IMF Decoder, Paralegal Research Advocates, and Advocates for Justice, Liberty, and Freedom, from promoting her fraudulent IMF decoding tax scheme and from engaging in conduct that substantially interferes with the administration and enforcement of the internal revenue laws. Dkt. 1.

ORDER - 1

1 Ms. Kukhahn was properly served and has failed to timely file an answer or other defend, default entered against Defendant on July 22, 2008. Dkt. 16. Having reviewed the Motion for Default Judgment (Dkt. 19) and the record in this case, the Court makes the following findings of fact and conclusions of law and enters this permanent injunction against Ms. Kukhahn:

## II. FINDINGS OF FACT

1. Sharon Kukhahn ("Kukhahn") resides and does business in Tacoma, Washington.

2. Ms. Kukhahn promotes tax-fraud schemes using the business names IMF Decoder, Paralegal Research Advocates, and Advocates for Justice, Liberty, and Freedom.

3. Ms. Kukhahn promotes her business on her websites www.ajlf.com (Advocates for Justice, Liberty, and Freedom) and www.paralegalresearchadvocates.com (Paralegal Research Advocates).

4. Ms. Kukhahn is the president and chief executive officer of both Paralegal Research Advocates and IMF Decoder.

5. Ms. Kukhahn's IMF Decoder scheme was promoted through Pinnacle Quest International ("PQI") and was sold only to PQI members in 2004 and 2005.

6. Kukhahn also markets her "decoding" scheme at seminars, either personally or in association with other promoters.

7. For a fee, a person may join PQI and become eligible to purchase the many services PQI promotes.

8. Through the seminars, promotional materials, and websites referred to above, Ms. Kukhahn sells a multi-phase program that falsely advises customers that: (1) they are not required to pay federal income taxes unless they are living in a United States territory; and (2) United States residents can only be taxed via a federal excise tax if they are involved in an excise taxable enterprise. Ms. Kukhahn further falsely advises

1 customers that the IRS, in order to subject people to federal taxes, fraudulently
2 misidentifies citizens as residents of a United States territory such as the U.S. Virgin
3 Islands, and/or misidentifies their occupations as an enterprise subject to an excise tax,
4 such as firearms manufacturing.

9. Ms. Kukhahn charges single taxpayers between $1,750 and $1,900 and charges married taxpayers between $2,450 and $3,195 for her "decoding" service, which is described below.

10. The first phase of the program provides the customer a Freedom of Information Act ("FOIA") form that requests the IRS to produce a transcript of the customer's IMF (individual master file).

11. Once the customer receives a copy of his or her IMF transcript, under the second phase of the program Ms. Kukhahn/IMF Decoder purportedly "decodes" the IMF to determine whether the IRS has fraudulently converted the customer's residence to a territory and/or occupation to an excise taxable enterprise. Invariably, Ms. Kukhahn falsely determines that the IRS has fraudulently misidentified the customer's residence and/or occupation in the customer's IMF.

12. In the third phase, Ms. Kukhahn/IMF Decoder prepares a "rebuttal letter" to the IRS demanding that the IRS correct "false and unlawful entries" and produce "lawful documentation evidencing" that the customer is subject to internal revenue laws and is required to pay income taxes. The letter demands that the IRS cease and desist all actions against the customer.

13. In the fourth phase of the "decoding" process, after the submission of a follow-up FOIA request, Ms. Kukhahn/IMF Decoder purportedly checks for any additional "false postings" by the IRS and purportedly confirms that past "false postings" that were previously "rebutted" were removed.

14. The final phase of the "decoding" process consists of obtaining certified copies of the documents obtained through the FOIA process that purportedly demonstrate

1 that the customer is not required to file a federal tax return.  These documents are then
2 ostensibly available for use as evidence in the purportedly "unlikely" event the
3 customer's claim that he/she is not required to file tax returns is challenged in court.

4     15. From January 2002 through September 2006, at least 1,100 persons have filed this type of "rebuttal letter" (titled "Reports of Fraudulent and Misleading Postings on the Individual Master File") with the IRS.  More than two dozen of the rebuttal letters have used Ms. Kukhahn/IMF Decoder's post office box address as the return address.

    16. Of a sample of 11 known customers, all but one have not filed tax returns for several years. Of the non-filers, one customer alone owes more than $1,000,000 in taxes and penalties and many others owe more than $100,000.

    17. In 2004 and 2005, an IRS undercover agent posed as an IMF Decoder customer and paid the $1,750 fee to become "decoded."

    18. Ms. Kukhahn/IMF Decoder falsely determined that the IRS had fraudulently coded the undercover agent's IMF as a "Virgin Islands filer."

    19. The undercover agent then received the "Phase 3 rebuttal package" from Ms. Kukhahn/IMF Decoder.  The rebuttal package, which included a false disclaimer that IMF Decoder is not offering tax advice, falsely states that the IRS is not an agency of the federal government and demands "lawful documentation evidencing" that the undercover agent's assumed identity is subject to internal revenue laws and required to file and pay income taxes.

    20. As part of promoting her decoding services, Ms. Kukhahn falsely tells customers that paying income taxes and filing federal income tax returns are voluntary, unless a person is engaged in an excise taxable activity such as manufacturing firearms.

    21. As part of the "decoding" process, Ms. Kukhahn falsely informs her customers that the IRS has fraudulently coded them as either residents of United States territories or persons engaged in businesses subject to an excise tax.

22. As a result, Ms. Kukhahn falsely tells her customers that they can rely on her "decoding" to prove that they are not legally obligated to file federal income tax returns or pay federal income taxes.

23. In promoting her scheme, Ms. Kukhahn falsely claims that the government is forbidden from taxing "natural born citizens."

24. In promoting her scheme, Ms. Kukhahn falsely states that if an individual signs an IRS tax form, particularly IRS Form 1040, then the individual has "declared under penalty of perjury [he/she] executed the [Form] 1040 in Washington, D.C., or a Territory or Commonwealth or possession of the government of the United States" and that an individual who "executed the [Form] 1040 while . . . in one of the states of the Union, [he/she] would have committed perjury."

25. In promoting her scheme, Kukhahn falsely states that if an individual signs any IRS form, especially IRS Form 1040, that person is declaring under penalty of perjury that he/she is a resident of and engaged in a taxable business activity in the Virgin Islands.

26. In meetings in June and August 2005 with IRS undercover agents posing as potential customers of IMF Decoders, Kukhahn made the following statements:

    (a) that the IRS had coded Ms. Kukhahn's IMF to indicate that she is a pistol and revolver manufacturer living in the Virgin Islands;

    (b) that Ms. Kukhahn has studied in-depth IRS Forms W-2, W-4, and 1099;

    (c) that Ms. Kukhahn has thousands of customers;

    (d) that one purpose of the decoding process is to create more work for the IRS to discourage the IRS from investigating the customer.

27. In correspondence with customers, Ms. Kukhahn/IMF Decoder falsely states that only citizens with qualified foreign sources of income are required to file a federal income tax return.

28. In correspondence with customers, Ms. Kukhahn/IMF Decoder falsely states that no tax is imposed on earnings of U.S. citizens living and working within the 50 states who make an equal exchange for their labor for wages since no gain results from the transaction.

29. Ms. Kukhahn claims to be a certified paralegal and claims to have done in-depth research on "rebutting" Forms 1040, W-2, W-4, and 1099.

30. Ms. Kukhahn also advises her customers on methods to fraudulently hide assets and income from the IRS.

31. Ms. Kukhahn, through Paralegal Research Advocates, charges $125 per letter to respond to IRS collection notices. She stated to IRS undercover agents that the IRS has no authority to issue summonses and thus said that customers can put summonses in a shredder.

32. Ms. Kukhahn knows, or has reason to know, that her statements to customers are false and that customers are legally obligated to file federal income tax returns and to pay federal income tax.

33. On an April 24, 2008 conference call posted on her website, Ms. Kukhahn falsely claimed that she transferred to the United States funds to compensate customers of IMF Decoder, Paralegal Research Advocates, and Advocates for Justice, Liberty, and Freedom, for any harm those customers may have suffered for relying on Ms. Kukhahn or her businesses' services.

34. On this conference call, Ms. Kukhahn also falsely claimed that her customers could collect their share of the settlement proceeds by submitting a claim form to United States Department of Justice Tax Division attorney John Monroe.

35. In reliance on Ms. Kukhahn's false claims, as of June 11, 2008, approximately 328 persons have submitted claim forms to counsel for the United States requesting reimbursement for the harm caused by Ms. Kukhahn.

36. The Government has thus far identified 315 customers from 43 different states who have participated in Ms. Kukhahn's scheme.

37. The IRS has determined from initial examinations of Ms. Kukhahn's customers a total loss of revenue of approximately $4.9 million caused by her customers' failure to file tax returns and pay income taxes.

38. Because Ms. Kukhahn's customers filed numerous frivolous and irrelevant FOIA requests, the IRS has also had to devote substantial resources to processing these requests.

### III. CONCLUSIONS OF LAW

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1340 and 1345 and 26 U.S.C. §§ 7402(a) and 7408.

2. Venue is thus proper under 28 U.S.C. §§ 1391 and 1396.

3. I.R.C. § 7408 authorizes a district court to enjoin any person from engaging in conduct subject to penalty under I.R.C. § 6700 if injunctive relief is appropriate to prevent recurrence of that conduct.

4. Section 6700 imposes a penalty on any person who organizes or participates in the sale of a plan or arrangement and in so doing makes or furnishes a statement with respect to the allowability of any deduction or credit, the excludability of any income, or the securing of any tax benefit by participating in the plan or arrangement which that person knows, or has reason to know, is false or fraudulent as to any material matter.

5. Ms. Kukhahn, individually and through IMF Decoder, Paralegal Research Advocates, and Advocates for Justice, Liberty, and Freedom, organizes, sells, and operates tax-fraud schemes that falsely promise tax benefits to customers.

6. Ms. Kukhahn, personally and through her employees, sells and administers the IMF decoding scheme described above, on the Internet and at promotional seminars.

7. The essence of Ms. Kukhahn's promotion is that the IRS has engaged in a conspiracy to deceive the American public about the requirements for filing federal

income tax returns and paying federal income taxes. According to Ms. Kukhahn, by deciphering one document, the IMF, she can reveal and "rebut" the IRS's purportedly fraudulent assertion that her customers are either a resident of the U.S. Virgin Islands or other United States territory or engaged in an excise taxable industry; and after this revelation and rebuttal, her customers will be classified as "nontaxpayers" who do not have to file federal income tax returns or pay federal income tax. In making these assertions, Ms. Kukhahn misquotes or misapplies a myriad of authority.

8. Ms. Kukhahn knew, or had reason to know, that the statements described above were false or fraudulent.

9. As someone who claims to have done extensive research on the subject, Ms. Kukhahn is or has reason to be aware that her IMF decoding scheme has been rejected by the courts. *See United States v. Standring*, 2006 WL 689116 (S.D. Ohio 2006); *United States v. Kahn*, 2004 WL 1089116, *1 (M.D. Fla. Mar. 30, 2004).

10. Moreover, Ms. Kukhahn tacitly admitted to undercover agents to knowing that the IRS rejects the scam she promotes; she advised the undercover agents that they had about three years after they stopped filing before the IRS "come[s] after you."

11. The statements were material because customers might rely, and did in fact rely, on Kukhahn's false statements in deciding not to file federal income tax returns and pay federal income taxes. As a result, Kukhahn's repeated false statements are "material" within the meaning of section 6700.

12. If not enjoined, Ms. Kukhahn is likely to continue to organize and sell tax-fraud schemes.

13. Ms. Kukhahn's "network and the mechanisms for continuing the business enterprise" are still in place. Moreover, Ms. Kukhahn has not taken any responsibility for her actions and has provided no assurances that she will change her behavior in the future. Unless Ms. Kukhahn is enjoined, she will be free to continue profiting from peddling her

false tax scheme that continues to cause harm to her customers (who rely on her advice and representations) and to the United States.

14. I.R.C. § 7402(a) authorizes a court to issue injunctions as may be necessary or appropriate for the enforcement of the IRS laws, even if the United States has other remedies available for enforcing those laws.

15. Ms. Kukhahn substantially interfered with the enforcement of the IRS laws by promoting her tax-fraud schemes. Customers who utilize Ms. Kukhahn's services fail to file returns and have filed many frivolous and irrelevant FOIA requests.

16. Ms. Kukhahn's conduct resulted in irreparable harm to the United States for which the United States has no adequate remedy at law.

17. There are serious questions going to the merits of this matter, and the balance of hardships tips sharply in the Government's favor.

18. Unless enjoined by this Court, Ms. Kukhahn is likely to continue to promote her tax-fraud scheme. The United States is entitled to injunctive relief under I.R.C. § 7402(a) to prevent the recurrence of this misconduct.

## IV. ORDER

Therefore, it is hereby

**ORDERED** that the Motion for Default Judgment (Dkt. 19) is **GRANTED**. Based on the foregoing findings of fact and conclusions of law, the Court enters the following permanent injunction against Sharon Kukhahn:

1. Pursuant to 26 U.S.C. §§ 7402 and 7408, Sharon Kukhahn and her representatives, agents, servants, employees, and anyone in active concert or participation therewith, are prohibited from directly or indirectly by means of false, deceptive, or misleading commercial speech:

    (a) organizing or selling the IMF Decoder scheme or any other tax shelters, plans or arrangements that advise or encourage others to attempt to evade the assessment or collection of correct federal tax;

1              (b)     engaging in any other activity subject to penalty under 26 U.S.C. §
2       6700, including organizing or selling a plan or arrangement and in connection
3       therewith making or furnishing a statement regarding the excludability of income
4       or securing of any other tax benefit by participating in the plan that Ms. Kukhahn
5       and her representatives, agents, servants, employees, and anyone in active concert
6       or participation with her knows or has reason to know is false or fraudulent as to
7       any material matter;
8              (c)     filing, providing forms for, or otherwise aiding and abetting the
9       preparation or filing of frivolous FOIA requests with the IRS;
10             (d)     preparing or assisting in the preparation of documents purporting to
11      "decode" IRS files;
12             (e)     giving advice to anyone about the federal tax laws or federal tax
13      matters, or representing anyone in connection with any matter before the IRS;
14             (f)     engaging in conduct subject to any penalty under the Internal
15      Revenue Code; or
16             (g)     engaging in conduct that substantially interferes with the proper
17      administration and enforcement of the internal revenue laws.
18      2.     Pursuant to 26 U.S.C. § 7402, it is **ORDERED** that Ms. Kukhahn shall
19 contact, within 30 days of this order, by mail (and also by email, if an email address is
20 known) all persons who have purchased any products, services, or advice associated with
21 the false or fraudulent tax scheme described herein, inform those individuals of the
22 Court's findings concerning the falsity of Ms. Kukhahn's prior representations, and attach
23 a copy of this permanent injunction against Ms. Kukhahn and her related entities;
24      3.     Pursuant to 26 U.S.C. § 7402, it is **ORDERED** that Ms. Kukhahn and her
25 representatives, agents, servants, employees, attorneys, and those persons in active
26 concert or participation with her, remove from Defendant's websites (www.ajlf.com,
27 www.paralegalresearchadvocates.com, www.imfdecoder.com, and imfdecoder.ath.cx) all
28

tax scheme promotional materials and false commercial speech and to display prominently on the first page of those websites a complete copy of this permanent injunction for one year; and

    4.    Pursuant to 26 U.S.C. § 7402 it is **ORDERED** that Ms. Kukhahn shall contact, within 30 days of this order, by mail (and also by e-mail, if an address is known) the Claimants listed in Exhibit 3 to Dkt. 21 and advise those individuals that Ms. Kukhahn and the United States have not agreed to a monetary settlement;

    5.    Pursuant to 26 U.S.C. § 7402, it is **ORDERED** that Ms. Kukhahn shall provide to the Justice Department, within 30 days of entry of this permanent injunction, a list of all persons who have purchased any tax-related products, services or advice from her in the past five years.

    6.    It is **ORDERED** that, for a period of one year after the entry of this permanent injunction, the government may engage in post-judgment discovery to monitor Ms. Kukhahn's compliance with the injunction.

DATED this 21st day of August, 2008.

BENJAMIN H. SETTLE
United States District Judge